Leon Greenberg, appearing for the appellants. Matthew C. Zerzo, appearing for the appellate. All right, good morning, Mr. Greenberg. May I begin? Yes. Good morning. First, tell me how much time if you want to reserve any time for rebuttal. I would like to reserve five minutes of my time. All right, very good. All right, please go forward. May it please the court, I'm Leon Greenberg, and I'm arguing today on behalf of the appellants. The court should be guided in making its decision in this case by its prior decision in the KRSM properties or Gilliam case. That is actually the leading case from any court dealing with the entire issue of how a disregarded tax entity who is a debtor can pay from its bankruptcy estate income tax liabilities that are not actually its income tax liabilities, but of its pass-through owner. The court, in that case, rejected allowing any such payments from a tax pass-through entity debtor. And it correctly reasoned in our view that income tax status under the code, the bankruptcy code and the income tax law should be consistent and it should be treated the same. And I would your honor. And in fact, we really don't have a subchapter five case that has addressed this precise issue. But I would submit the reasoning of the court here, which I was going to quote, is that the owner is elected to have the LLC ignored as a separately taxed entity so they could enjoy limited liability while avoiding double corporate and individual taxation. That choice comes with benefits and as this appeal demonstrates, burdens. The bankruptcy court did not discuss the Gilliam precedent in its decision. It simply adopted the findings proposed by the debtor and found that the payment of Mr. Nadey's income taxes was a reasonably necessary expense of a subchapter five debtor. On appeal, they're now arguing it's Gilliam is just simply not applicable because it wasn't a subchapter five case and the bankruptcy court had the discretion to determine whether that payment was reasonably necessary. Is there anything in the bankruptcy code that requires the court to exclude as an expense and as an expense, it's necessary for the continuation, preservation or operation debtors business and expense that is not the debtors not legally liable to pay? Well, your honor, if we want to go beyond the fact as to whether the expense is liable and analyze this under some different standards, such as well, that's one of the arguments that you made was that the debtor is not liable for this payment, so it shouldn't be an operational expense of the business. Well, your honor, I would submit that the examination doesn't have to go any further than that. The entity we're looking at the entity. The entity is the debtor. The debtor is the one who has the protections under the code, but so but the definition that Congress used was any necessary expense for the operation and continuation of the business that that is correct. However, if we're going to look at a broader analysis here, the question is, is this in fact. Necessary and what does the debtor gain from this expense and the debtor gains nothing from this expense? There is nothing in there. I have to gain it like something tangible. I mean, the intangible gain is that the debtor can continue in their business, right? They can continue because Mr. Net is able to participate if he is too high of a burden to taxes. Then wouldn't he just shut down the business? What's the benefit to the estate and the debtor? Then if that is this, if that is the standard that the court would adopt, then the question is what proof is there of that standard? Mr. Nady is not the debtor. We have no information on his actual financial position. The limited information in the record indicates that, but you didn't cross examine or put on any contrary evidence, did you? You made a legal argument and said that it's a matter of law. You can't apply this and you didn't actually challenge anything that he put in. You put in a declaration. Well, your honor, it is the debtor's burden to establish that it's a reasonably necessary expense, not mine. Is there anything in the code that says that only gross income or only pre-tax income would be considered by the court as a disposable, projected disposable income under 1190-1D2? Your honor, you're familiar with the code. I am not going to point and tell you the code contains language that it does not contain. So the answer to that question is no then, right? I can point to the court to nothing of that sort, but the issue then, assuming that the debtor was to be examined for this allowance based upon the standard we're discussing right now, why is the debtor allowed to deduct the tax rate for Mr. Nady personally rather than the 21% corporate tax rate it could elect to pay and continue its business? The focus of the code is on the debtor's protections and the debtor's reorganization as an ongoing entity and a fiduciary capacity to also pay the creditors under the structure set forth in the code. Let's get to the point here about the purpose of paying creditors. I mean, isn't it true that Judge Cox found that the plan was feasible? Yes, that is correct. You didn't say it was feasible. Okay, as a result, since the plan provides 100% payment plus interest, isn't the pass-through largely irrelevant? No, it is not. I have 600 taxi driver class members who are owed unpaid minimum wages. A significant number of these people are already dead. They've been waiting since 2018 to get paid. This petition was filed in 2022. They've been paid almost nothing on their claims. So, there is a real reason for them to want to get paid sooner and not wait five years. Isn't that a good faith argument that the plan is not in good faith, but was that argued before Judge Cox? What was argued, again, was the issue of the inappropriateness of allowing the tax deduction to be taken by the debtor for Mr. Nady's income tax responsibility. But the answer to the question that he just posed to you is, no, you did not challenge this plan on the basis that it unfairly delayed payment to your clients. We did not. The issue, but we did challenge it based upon the fact that it was allowing these payments to be made, and it was allowing them to be made at that heightened rate and not at the 21% available rate, which would delay payment to the creditors. So, we, in fact, did make that argument as a result of our objections to the tax treatment that was ongoing here. And there is nothing in the court's decision or in Apelli's arguments that address why the entity here, the debtor entity, should be allowed to make that heightened level of tax payments, not the 21% that was available to it. Wasn't the bankruptcy court's decision to include the payment of the debtor's principal's tax liability as an expense necessary for continuation, preservation, or operation of the debtor's business supported by Mr. Nady's declaration filed in support of confirmation of the plan? It was not. If you look, and this is discussed in my reply brief at page eight, I would direct you to footnote one, where I do reproduce the entirety of Mr. Nady's assertion. All he says, it would be grossly unfair and inequitable to require the debtor to have to pay the creditors because it would impose an undue hardship on me. Without payment of the tax liability. Right. But there is nothing to support this. He does not, this is not like a chapter 13 situation where the debtor is explaining his ability to support his family or to maintain his lifestyle is going to be impaired if he's forced to pay this. There is nothing in the record as discussed in footnote two in that page. We have evidence in the record that Mr. Nady is quite wealthy. He had over $1.7 million from the cross-examination. You cross-examined him and established. We did not. I'm relying on what is on the record, your honor. I think I should reserve the rest of my time for rebuttal if that is okay. Sure. Thank you. May it please the court. My name is Matt Zirzo. I'm counsel for the Appellee Debtor ACAB Series LLC. Your honors, every creditor under this debtor's plan gets paid a hundred cents on the dollar plus interest. The appellant's claim is one of timing. How quickly payments are proposed. Appellants would prefer that they get paid in full a little faster. On those facts, the bankruptcy court committed no clear error and its decision to confirm is not an abuse of discretion. Candidly, your honors, this appeal is about appellants running up attorney's fees because they believe it's recoverable under the Minimum Wage Act amendment. And so they're pulling out all the stops, raising every potential argument because they are going to go back to state and claim that this appeal is a recoverable fee award. Independent ground number one to confirm this is that the debtor's full payment plan itself necessarily satisfies 1191C2. Before you even get to the very interesting, candidly, from my perspective as a debtor's counsel, the reimbursement tax issue, 1191C2 sets a floor, an irreducible minimum of what a plan must pay at a minimum level of required distributions to creditors. It simply requires the devotion of PDI or its value. It says nothing about how quickly payments must be made. It says, in other words, the court does not even need to read this very interesting tax issue. 1191C2 says nothing about timing of payments. It just sets the distribution floor. A 100% payment plan per se satisfies that legal requirement. Is it possible that a 100% plan with interest would not satisfy it if the court concluded that it was not presented in good faith? Certainly, Your Honors. And that is obviously a separate legal requirement. As we indicated in our brief, satisfaction of the fair and equitable standard is not limited to the enumerated factors in 1191C1, C1, 2, and 3, or the other. And here Judge Cox found that the plan was feasible and in good faith. Correct, Your Honors. And those determinations were completely, the appellants did not argue either of those factors. In fact, if you read appellant's briefing, it is devoid of any citations to 1129 or 1191. They just argue facts and issues like this tax reimbursement issue. So, independent ground number one, and as interesting as the tax reimbursement issue is, as a debtor's counsel files a lot of subchapter five cases, I don't even think you necessarily need to reach that issue because a full payment plan satisfies 1191C2. I think at best, what that means is the appellant has no support for its argument under 1191C1 because that applies to secured claims. C2, C3 doesn't apply. That's really feasibility. So, what is the basis for their argument? Well, we all know fair and equitable can mean other things other than the enumerated requirements, but even that they really don't address in their briefing, we did our best to address what courts have considered the various unquantified elements of the fair and equitable rule. Of course, we're borrowing from chapter 11 and chapter 13 because of the lack of authority in the subchapter five arena, but I don't know why it would be any different in this case. Your Honors, even if you do reach the tax reimbursement under 1191D2, it is a factual finding that is amply supported by the record. There was no attempt to cross-examine, no attempt to put in contrary evidence in that regard. This was a very short confirmation hearing in all candor. And again, PDI just sets a floor, a minimum of best efforts test that a plan must pay at least that much and the relevance of a specific line item and expense, like in this case, tax reimbursements or really any other element of a specific expense. Its relevance really evaporates when you have a full payment plan. You can't do better than full payment. That's the no premium rule we discussed in our briefing that is inherent in the fair and equitable requirement as well. This is not a partial payment plan. This is not a pot payment plan, which is probably what you're used to seeing in most subchapter five cases where a debtor attempts to not pay in full. It attempts to only pay in part and only pay as a PDI over the life of the plan. So even if you do reach this issue, the PDI floor under 1191D2 is honored when a plan pays in full. Your Honors, Mr. Greenberg read with the KRSM case. I think that's well distinguishable. We did so in our brief, but since he led with that, that is a chapter seven case that is significant. It really dealt with property, the estate concepts under 541 and really what the result was mandated by the priority distribution scheme under 726 of the bankruptcy code. That, of course, as we all know, was very much changed under subchapter five. Subchapter five threw out the book, especially the absolute priority rule, and was a significant change in the law. The inquiry before your Honors today, if you do reach the tax issue, is reasonable necessity to the continuation, operation, or preservation of the business. I would submit that tax reimbursement is not necessarily a liability of this debtor, and that's true, but that isn't the test. Mr. Greenberg is trying to read into the statute a liability test that appears nowhere in 1191. What it does draw from is your Honors reasonable discretion in deciding what is reasonably necessary to keep the ship afloat, and that may involve payment of non-debtor expenses. That may involve charitable contributions, reserves, a variety of contexts. You will see this issue arise, and courts must, and there's a long line of authority establishing that you must be granted a reasonable amount of discretion in each particular case to make necessary factual findings and determinations whether something is reasonably necessary, and the court did that here, and I think did so with the benefit of an uncontested record where you had a full payment plan, and a debtor in that situation, I think especially the court's should be entitled to a substantial amount of deference here. Do you think that it's the abuse of discretion standard that's applicable? I do, your Honors. A confirmation decision to confirm is obviously reviewed for abuse of discretion, whether a plan is fair and equitable, and whether an expense is reasonably necessary or clear error. I think the first to issue independent ground, I raise the what is required under 1191 C2 is probably more of a legal issue, but again, I'm not relying solely upon that issue to the extent you reach, and candidly, I really would like you to reach the tax issue because I encounter it in a lot of my Subchapter 5 cases, and given how novel Subchapter 5 is, we only have the Premier Glass case that even touches on it, and even in that case, you didn't have a clean ruling because it was a failure of proof, even though the judge said, I think this is appropriate, but you hadn't proven it. Getting clarity on this issue would certainly help, I think, in practice. I think too often, you won't see these kinds of issues on appeal, a question regarding a specific line item of expense, and I think that's also a factor of the substantial deference of factual finding like that should be entitled to. And in this case, you believe that the declaration of Mr. Nadee supported the allegation that contrary to what Mr. Greenberg just argued? Certainly so, Your Honors, and I'm not relying solely on the declaration. If you look at the very structure of the plan and the means for plan implementation, it contemplates that Mr. Nadee could, in fact, infuse additional capital. If you look at some of the effectuation provisions of the plan, Mr. Nadee, his continued operation of the business is included. He's been the operator for decades. His provision of the privilege licensure through the Nevada Department of Taxation, there are various provisions. In fact, Mr. Nadee, personally, as you may see, signed the plan because he is personally bound by certain provisions of the plan, including a preservation of avoidance actions, an injunction against a third-party entity of property where the debtor was intending to move to, and certain payments to that entity. So Mr. Nadee is personally, frankly, heavily involved, if not inextricably intertwined with the proper effectuation of this business. And that is really the lynchpin, in addition to the hardship evidence in his declaration that underpins, I think, the court's factual determination as to the reasonable necessity of the tax reimbursement. Your Honors, with that, I don't have anything further to add. I'm happy to address any further questions. Any further questions? I'm good, thank you. All right, thank you. Your Honors, we have heard nothing from the Pele, just as we heard nothing from the bankruptcy court rationalizing the allowance for the 30% tax liability by the debtor, as opposed to the 21% available corporate tax rate. Now, I know there's discussion of Mr. Nadee's importance to the business, but he's compensated under the plan, handsomely, $240,000 a year. And the fact that he personally could get a windfall, essentially, or an additional benefit from profit treatment of the business by allowing the pass-through, enforcing those tax payments onto the plan, has nothing to do with it being reasonably necessary for the payment and continuation of the business. If the court is going to look at it as a business operation and not on an entity tax liability analysis, as we have urged, I understand that. But how can the corporation step away from minimizing, the debtor step away from minimizing? Significantly, it's tax liability. For no benefit to it, only to Mr. Nadee's benefit, and Mr. Nadee's participation in the business, and is being compensated, there's nothing in the record indicating that he would cease working in the business, or the business would cease functioning, if it limited that tax liability, as we told the bankruptcy court, it should so do. So, I would submit that that is a question of law, of a clear error of law here, by the bankruptcy court, and allowing that. There is no rationalization for that. In short, aren't you saying, basically, he's getting $240,000 worth of compensation, and he's getting the benefit of, you know, this pass-through, and that this is not fair. But didn't the court conclude, ultimately, that it was a fair plan, and those specific arguments that you're raising now, you didn't raise them below? Well, we did raise that this was inappropriate. We specifically argued that it was inappropriate for the plan to provide, this was discussed at page four of my opening brief, the citations to the record. We said that because the plan can secure a lower tax rate, it should do so. This is not a reasonably necessary expense to pay at the 30% rate. It is not properly calculating its PDI, as it is required to do so. And there's no dispute that that 21% tax rate was available. Also, at page four of my brief, I cite to the parts of the record where their accountant testified a confirmation that that could be done. The election of this higher tax rate benefits no one except Mr. Nady. There is no evidence or proof in the record. Mr. Nady's declaration does not address whether paying that in some fashion, having to foot the advantage to him personally of the pass-through status, would impair anything. All he talks about is it would be unfair to make me pay all the taxes from the net income without the corporation having to shoulder the burden. And if the court finds that it's appropriate for the debtor to shoulder the burden here, okay. But the debtor's priority is for its business. That's the whole focus, right? Reasonable expense is necessary for the business, the continuation of the debtor's operations. There is no rationalization for that expense to exceed the 21% tax rate. None was given by the debtor in seeking confirmation and opposing our objection on that one point. So, I do not understand how that could not be an error by the bankruptcy court, assuming the bankruptcy court otherwise was correct, as your panel may well rule, that it was proper to consider those income taxes generated by the business as a PDI expense. And I want to also just stress to the court that there's been much discussion by the appellate argument today that, well, this is a full payment plan, so therefore, you know, these requirements don't apply. Yes, it is a full payment plan, but the future is always uncertain. The taxi industry here in Nevada is far from certain. The Uber and so forth has been competing greatly. We don't know if they're going to be able to actually make these payments. I mean, we hope they will. Oh, is that different from any other case? In that sense, your honor, it isn't. I'm just explaining that I think the court's focus should be on not what the debtor has promised, but what the law requires the debtor to do and the obligations it imposes upon the debtor, which I don't believe are being honored in this situation. You can't get more than full payment with interest, can you? That is correct. The question that you're raising is how much quicker could you get paid, not will you be paid? Well, they found that it was reasonable. They now urge us to decide, well, you should have gotten paid faster. That is your honor. Assuming the plan is successful, and again, we don't know, there is always risk and uncertainty. That is the result of the ruling we're asking from the court, but it's not a question of the material result here. It's a question of what the law requires, but he's satisfied the statute. The law doesn't require more than full payment to you, and it doesn't require him to do more than projected disposable income. You've decided that it's a legal issue because it's a tax question that the debtor's not liable for, and so do you want to reduce it to either the corporate tax liability or no, not pay it at all, but that's not what the court found. The court found that to be a factual question that it could resolve against you, and you're trying to make it into a legal issue. Your honor, what facts would justify the use of the higher tax rate? The bankruptcy court none. We pointed out to the bankruptcy court there were none. Apelli has cited none. They explained none to the bankruptcy court when the bankruptcy court considered this. The bankruptcy court did not address that issue. The bankruptcy judge determined as a matter of fact that the continuation of the business was necessary expense of the business was that that tax liability for its principle be included in the normal expenses of its operation, and that would be so that he would continue to be the head of the organization, continue to operate it, follow the other terms of the plan, contribute monies that were required. Whatever those facts were, that's what she based the decision on. That's all in the record, and you didn't challenge any of that. Well, your honor, I take difference with that. We did when we explained to the court that this was not necessary for the assuming the business tax liability had to be paid. It was not necessary to continue the business to pay it at Mr. Nadee's preferred rate because he was being compensated under the plan. So if they had increased his salary to include the full payment of the tax and not listed it as a tax liability, in essence, then you would have had to challenge it on the basis that it was an excessive salary, and you didn't challenge anything about that factual situation. Your honor, we did. We challenged that it was a benefit to him that he wasn't entitled to because of the way the PDI needs to be calculated. We did not challenge his $240,000 salary. We said, okay, fine. That's appropriate compensation for him. We're not going to dispute it, but when you're calculating the PDI, assuming you want to adopt the approach that your honor is discussing, which is that we look at the business levels operations and the tax liability generated by the business. No, I'm suggesting you look at what the court found, and the court found as a matter of fact that this was a necessary expense for the operation and continuation of the business. You disagree with that and think it's a legal issue. That's where I'm having my problem. Well, your honor, perhaps we don't disagree completely, and I just want to clarify our position. Assuming that the law is, as we've been discussing, and that the tax liability of business has to be dealt with by the debtor regardless of its tax status as a disregarded entity, assuming that tax liability is properly paid by the debtor, the question then though is in what amount and why? Why is it a necessary expense for the debtor to elect a higher tax rate than the tax rate available to it? There was no reason for that. It is not something that the Thank you very much. Thank you. This matter is submitted.
judges: Brand, Gan, and Corbit